ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL IV

| EDWIN RODRÍGUEZ NIEVES Y OTROS<br><br>Recurridos<br><br>v.<br><br>DR. ANÍBAL TORNES ACOSTA Y OTROS<br><br>Peticionarios | KLCE202300418 | ***Certiorari*** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso Núm.<br><br>SJ2020CV05833 Salón 806<br><br>Por:<br><br>Daños y Perjuicios |
| --- | --- | --- |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Juez Barresi Ramos y la Jueza Rivera Pérez.

Juez Ponente, Rivera Pérez

**SENTENCIA**

En San Juan, Puerto Rico, a 31 de mayo de 2023.

Comparece la Universidad de Puerto Rico (en adelante, UPR) y nos solicita la revisión de la *Resolución* emitida y notificada el 13 de febrero de 2023 por el Tribunal de Primera Instancia, Sala Superior de San Juan (en adelante, TPI).[1] Mediante dicho dictamen, el TPI declaró No Ha Lugar la *Moción de Desestimación y/o Sentencia Sumaria* presentada el 24 de enero de 2023 por la UPR.

Por los fundamentos que expondremos, se expide el auto de *certiorari* y se revoca la *Resolución* recurrida.

**I**

El 28 de octubre de 2020, el Sr. Edwin Rodríguez Nieves y el Sr. Edwin O. Rodríguez Santiago (en adelante, parte recurrida) presentaron *Demanda* de daños y perjuicios contra el Dr. Aníbal Tornes Acosta, Fulana de Tal y la Sociedad de Bienes Gananciales compuesta entre ambos; el Dr. José Santiago Figueroa, Mengana de Tal y la Sociedad de Bienes Gananciales compuesta entre ambos; el

---

[1] Anejo IV del *Certiorari*, págs. 22-23.

Número Identificador

SEN2023 _____

Centro Médico de Puerto Rico, Inc.; las aseguradoras A, B, C y D; los doctores E & F; y las corporaciones G y H.[2] En síntesis, la parte recurrida solicitó una indemnización por los daños y perjuicios sufridos por la alegada falta de pericia de las partes demandadas al brindarle tratamiento médico al Sr. Edwin Rodríguez Nieves en el Centro Médico de Puerto Rico, luego de que este sufriera un

---

[2] Anejo V del *Certiorari*, págs. 24-31. En específico, en la demanda se incluyeron como demandados a las partes siguientes:

"3. **LA PARTE DEMANDADA, DR. ANIBAL TORNES ACOSTA** ("Dr. Tornes"), es mayor de edad, casado, doctor en Medicina y residente de Puerto Rico. Para la fecha de los hechos era empleado, contratista independiente o tenía privilegios en CENTRO MÉDICO DE PUERTO RICO, INC., en donde le brindó servicios al Sr. Rodríguez. Su dirección conocida es: Bo Monacillos Carr. 22, Paseo Dr. Jos[é] Celso Barbosa, San Juan, PR 00935, y su número de teléfono es: (787) 777-3708.

4. El Dr. Tornes está casado con Fulana de Tal con quien tiene constituida una Sociedad Legal de Gananciales, quienes responden solidariamente por los daños que se reclaman en la presente demanda.

5. **LA PARTE DEMANDADA, DR. JOSÉ SANTIAGO FIGUEROA** ("Dr. Santiago"), es mayor de edad, casado, doctor en Medicina y residente de Puerto Rico. Para la fecha de los hechos era empleado, contratista independiente o tenía privilegios en CENTRO MÉDICO DE PUERTO RICO, INC., en donde le brindó servicios al Sr. Rodríguez. Su dirección conocida es: Cond Plaza De Diego 310, Ave. De Diego Suite 301 San Juan, PR 00909, y su número de teléfono es: (787) 721-5505.

6. El Dr. Santiago está casado con Mengana de Tal con quien tiene constituida una Sociedad Legal de Gananciales, quienes responden solidariamente por los daños que se reclaman en la presente demanda.

7. **LA PARTE DEMANDADA, CENTRO MÉDICO DE PUERTO RICO, INC.** ("Hospital"), es una entidad corporativa debidamente inscrita bajo las leyes de Estado Libre Asociado que proveyó el personal médico que le brindó tratamiento negligente al Sr. Rodríguez, por lo cual responde vicariamente y solidariamente por los daños que se reclaman en la presente demanda. Su dirección es: Centro Médico de PR y el Caribe, R[í]o Piedras 00921 San Juan, Puerto Rico y su número de teléfono es: (787) 777-3535.

8. **LA PARTE DEMANDADA**, las aseguradoras A, B, C, y D, son compañías aseguradoras desconocidas las cuales emitieron pólizas a favor de cualquiera de los codemandados que cubren los hechos que más adelante se relatan. Las aseguradoras A, B, C, y D responden solidariamente por los daños que se reclaman en la presente demanda.

9. **LA PARTE DEMANDADA**, los doctores desconocidos E y F, son médicos que proveyeron tratamiento negligente al Sr. Rodríguez, de los cuales al presente se desconoce su nombre.

10. **LA PARTE DEMANDADA**, las corporaciones G y H, son entidades o corporaciones organizadas bajo las leyes del Estado Libre Asociado de Puerto Rico, las cuales administraban la sala de emergencia, el Hospital o el consultorio médico donde el paciente fue tratado, por lo cual responden vicaria y solidariamente por los daños que se reclaman en la presente demanda." *Íd.*, págs. 25-26.

accidente en el que hirió una de sus manos mientras operaba una sierra eléctrica en su hogar.

El 25 de febrero de 2021, la parte recurrida presentó *Primera Demanda Enmendada* con el fin de incluir como parte demandada a la Administración de Servicios Médicos de Puerto Rico (en adelante, ASEM).[3] Luego de varios trámites procesales,[4] el 8 de agosto de

---

[3] Anejo VI del *Certiorari*, págs. 32-38. En cuanto a las partes demandadas, en la *Primera Demanda Enmendada* se alegó lo siguiente:

> "**LA PARTE DEMANDADA, DR. ANIBAL TORNES ACOSTA** ("Dr. Tornes"), es mayor de edad, casado, doctor en Medicina y residente de Puerto Rico. Para la fecha de los hechos era empleado, contratista independiente o tenía privilegios en CENTRO MÉDICO DE PUERTO RICO, INC., en donde le brindó servicios al Sr. Rodríguez. Su dirección conocida es: Bo Monacillos Carr. 22, Paseo Dr. Jos[é] Celso Barbosa, San Juan, PR 00935, y su número de teléfono es: (787) 777-3708.
>
> 4. El Dr. Tornes está casado con Fulana de Tal con quien tiene constituida una Sociedad Legal de Gananciales, quienes responden solidariamente por los daños que se reclaman en la presente demanda.
>
> 5. **LA PARTE DEMANDADA, ADMINISTRACIÓN DE SERVICIOS MÉDICOS DE PUERTO RICO** ("Hospital"), es una entidad corporativa debidamente inscrita bajo las leyes de Estado Libre Asociado que proveyó el personal médico que le brindó tratamiento negligente al Sr. Rodríguez, por lo cual responde vicariamente y solidariamente por los daños que se reclaman en la presente demanda. Su dirección es: Centro Médico de PR y el Caribe, R[í]o Piedras 00921 San Juan, Puerto Rico y su número de teléfono es: (787) 777-3535.
>
> 6. **LA PARTE DEMANDADA**, las aseguradoras A, B, C, y D, son compañías aseguradoras desconocidas las cuales emitieron pólizas a favor de cualquiera de los codemandados que cubren los hechos que más adelante se relatan. Las aseguradoras A, B, C, y D responden solidariamente por los daños que se reclaman en la presente demanda.
>
> 7. **LA PARTE DEMANDADA**, los doctores desconocidos E y F, son médicos que proveyeron tratamiento negligente al Sr. Rodríguez, de los cuales al presente se desconoce su nombre.
>
> 8. **LA PARTE DEMANDADA**, las corporaciones G y H, son entidades o corporaciones organizadas bajo las leyes del Estado Libre Asociado de Puerto Rico, las cuales administraban la sala de emergencia, el Hospital o el consultorio médico donde el paciente fue tratado, por lo cual responden vicaria y solidariamente por los daños que se reclaman en la presente demanda." *Íd.*, págs. 32-33.

[4] Entre estos, el 19 de marzo de 2021, el Dr. Aníbal Tornés Acosta, su esposa Fulana de Tal y la Sociedad Legal de Bienes Gananciales compuesta por ambos presentaron *Comparecencia Especial Solicitando Prórroga para Hacer Alegación Responsiva sin Someterse a la Jurisdicción de este Honorable Tribunal & Asumiendo Representación Legal.* Véase, Anejo XI del *Certiorari*, a las págs. 75-76. En lo pertinente, en esta moción se indicó lo siguiente:

> "[...]
>
> 3. Para la fecha de los alegados hechos de esta demanda, el Dr. Tornés era un médico contratista de la Administración de Servicios Médicos de Puerto Rico (ASEM), desempeñándose en la Sala de Emergencia de ASEM. Al Dr. Tornés le cobija la inmunidad que la Ley Habilitadora de la ASEM, Ley Número 66 del 22 de junio de 1978, según enmendada, conocida como la Ley de la Administración de Servicios Médicos de Puerto Rico, le otorga a sus

2022, la parte recurrida presentó *Segunda Demanda Enmendada* con el fin de incluir como parte demandada a la UPR.[5]

---

médicos y profesionales de la salud contra demandas de impericia médica, cuando actúan de buena fé y dentro del marco de las funciones de su cargo.

4. Por otra parte, **el Dr. José Santiago Figueroa era facultativo de la Universidad de Puerto Rico, Recinto de Ciencias Médicas, entidad independiente a la ASEM.** Es decir, la ASEM no es el patrono de este galeno ni éste es contratista de la ASEM.

[...]." (énfasis suplido).

Además, el 3 de mayo de 2021, ASEM presentó *Contestación a Primera Demanda Enmendada.* Véase, Anejo XI del *Certiorari*, a las págs. 77-85. En lo pertinente, en su contestación ASEM indicó lo siguiente:

"[...]

La ASEM no es el patrono de los médicos residentes de Ortopedia ni de los facultativos médicos o "attendings" que le supervisan y; que prestan servicios en la Sala de Emergencia de la ASEM. Tanto el residente como el "attending" están vinculados al Recinto de Ciencias Médicas de la Universidad de Puerto Rico. La ASEM no responde por las omisiones o acciones negligentes, cometidas si alguna, de los médicos o personal de la salud que no sea contratista o empleado de la ASEM.

[...]

El paciente acudió a su primera cita en la Clínica de Ortopedia el 8 de noviembre de 2019 donde el ortopeda y especialista en cirugía de mano, Dr. José Santiago Figueroa lo evaluó. A esa fecha, el Dr. Santiago Figueroa era un facultativo médico de la Universidad de Puerto Rico, Recinto de Ciencias Médicas. El paciente nunca regresó a la Sala de Emergencia de ASEM.

[...]

Con relación a las visitas del Sr. Rodríguez Nieves a la Clínica de Ortopedia, surge de nuestros registros que éste asistió en tres ocasiones ausentándose en otras tres. Las fechas en las que visitó la Clínica de Ortopedia y fue atendido por los residentes del Servicio de Ortopedia y por el Dr. José Santiago Figueroa, "attending" de dicho servicio fueron 8 de noviembre de 2019, 15 de noviembre de 2019 y 21 de febrero de 2020. La ASEM no es el patrono de los médicos residentes de Ortopedia ni de los facultativos médicos o "attendings" que le supervisan y; que prestan servicios en la Clínica de Ortopedia. Tanto el residente como el "attending" están vinculados al Recinto de Ciencias Médicas de la Universidad de Puerto Rico. La determinación de operar o no a un paciente está sujeta al criterio médico.

[...]."

---

[5] Anejo VII del *Certiorari*, a las págs. 39-52. En cuanto a las partes demandadas, en la *Segunda Demanda Enmendada* se alegó lo siguiente:

"3. **LA PARTE DEMANDADA, UNIVERSIDAD DE PUERTO RICO, RECINTO DE CIENCIAS MÉDICAS** (en adelante, "Recinto de Ciencias Médicas"), es una entidad corporativa debidamente formada bajo las leyes de Estado Libre Asociado que proveyó el personal médico que le brindó o debió haber brindado tratamiento al Sr. Rodríguez, por lo cual responde vicariamente y solidariamente por los daños que se reclaman en la presente demanda. Su dirección es: Centro Médico de Puerto Rico y del Caribe, R[í]o Piedras 00921 San Juan, Puerto Rico y su número de teléfono es: (787) 777-3535.

El 4 de octubre de 2022, la UPR presentó su *Contestación a Segunda Demanda Enmendada,*[6] en la cual, en síntesis, negó la mayoría de las alegaciones de la demanda y levantó varias defensas afirmativas, entre estas, las siguientes:

1. La segunda demanda enmendada está prescrita en cuanto al codemandado Universidad de Puerto Rico, porque desde el 21 de marzo de 2021 la parte demandante conocía que los médicos especialistas que atendieron al señor demandante eran facultad médica de la UPR y no fue hasta el 8 de agosto de 2022 que trae al pleito a la UPR. Surge del expediente legal digital que:

a. El 19 de marzo de 2021 [Docket 19] ASEM informó que el Dr. Santiago era facultativo de la UPR.

b. En la contestación a demanda de ASEM de 3 de mayo de 2021 se informó que los residentes como los "attending" eran del Recinto de Ciencias Médicas de la Universidad de Puerto Rico. No obstante, la demanda para traer al pleito a la UPR se radicó el 8 de agosto de 2022. Por tanto, levantamos la defensa de prescripción, reservándonos el derecho de presentar Moción Dispositiva.

[…]

5. La Universidad de Puerto Rico no es el patrono del personal de enfermería y personal paramédico de la Sala de Emergencia del Centro Médico (ASEM), ni de las Clínicas de Ortopedia de ASEM. Por tanto, no responde por las actuaciones de este personal.

---

4. **LA PARTE DEMANDADA, ADMINISTRACIÓN DE SERVICIOS MÉDICOS DE PUERTO RICO**, es una entidad corporativa debidamente inscrita bajo las leyes de Estado Libre Asociado que proveyó el personal médico que le brindó tratamiento negligente al Sr. Rodríguez, por lo cual responde vicariamente y solidariamente por los daños que se reclaman en la presente demanda. Su dirección es: Centro Médico de PR y del Caribe, R[í]o Piedras 00921 San Juan, Puerto Rico y su número de teléfono es: (787) 777-3535.

5. **LA PARTE DEMANDADA**, las aseguradoras A, B, C, y D, son compañías aseguradoras desconocidas las cuales emitieron pólizas a favor de cualquiera de los codemandados que cubren los hechos que más adelante se relatan. Las aseguradoras A, B, C, y D responden solidariamente por los daños que se reclaman en la presente demanda.

6. **LA PARTE DEMANDADA**, los doctores desconocidos E y F, son médicos que proveyeron tratamiento negligente al Sr. Rodríguez, de los cuales al presente se desconoce su nombre.

7. **LA PARTE DEMANDADA**, las corporaciones G y H, son entidades o corporaciones organizadas bajo las leyes del Estado Libre Asociado de Puerto Rico, las cuales administraban la sala de emergencia, el Recinto de Ciencias Médicas o el consultorio médico donde el paciente fue tratado, por lo cual responden vicaria y solidariamente por los daños que se reclaman en la presente demanda."

[6] Anejo IX del *Certiorari*, a las págs. 55-60. La UPR fue emplazada para el 10 de agosto de 2022. Véase, Anejo VIII del *Certiorari*, a las págs. 53-54.

6. La Universidad de Puerto Rico responde por los facultativos médicos que sean y pertenezcan a la Facultad de la Universidad de Puerto Rico.

[…].”

Así las cosas, el 24 de enero de 2023, la UPR radicó *Moción de Desestimación y/o Sentencia Sumaria.*[7] En síntesis, la UPR alegó que fue incluida en el pleito transcurrido el término prescriptivo de un (1) año establecido en el Artículo 1868 del Código Civil, Edición de 1930, 31 LPRA sec. 5298 (Derogado), para presentar una acción bajo el Artículo 1802 del Código Civil, Edición de 1930, 31 LPRA sec. 5141 (Derogado). Argumentó que, conforme a la teoría cognoscitiva del daño, este término prescriptivo comenzó a transcurrir el 19 de marzo de 2021, fecha en que la parte recurrida advino en conocimiento de que el Dr. José Santiago Figueroa era uno de sus facultativos mediante la *Comparecencia Especial Solicitando Prórroga para Hacer Alegación Responsiva sin Someterse a la Jurisdicción de este Honorable Tribunal & Asumiendo Representación Legal* presentada por el Dr. Aníbal Tornés Acosta, *et als.*[8] Añadió que esta información surgía, además, de la *Contestación a Primera Demanda Enmendada* presentada por ASEM el 3 de mayo de 2021.[9]

El 13 de febrero de 2023, la parte recurrida presentó *Moción en Oposición a Moción de Desestimación y/o Sentencia Sumaria.*[10] En síntesis, la parte recurrida alegó que la presentación de la demanda original tuvo el efecto de interrumpir el término prescriptivo en cuanto a la UPR, por lo que la reclamación no estaba prescrita. Alegó que en dicha demanda se designó a la UPR con un nombre ficticio porque se ignoraba el verdadero y se expuso una reclamación específica contra esta parte; y que, al descubrirse el verdadero

---

[7] Anejo III del *Certiorari*, a las págs. 13-21.
[8] Véase, nota al calce Núm. 4.
[9] *Íd.*
[10] Anejo X del *Certiorari*, a las págs. 61-74.

nombre, se hizo la correspondiente enmienda a la demanda con la autorización del TPI.

Ese mismo día, el TPI emitió y notificó la *Resolución* recurrida, mediante la cual declaró No Ha Lugar la *Moción de Desestimación y/o Sentencia Sumaria* presentada por la UPR el 24 de enero de 2023.[11] El 28 de febrero de 2023, la UPR presentó *Moción de Reconsideración*, la cual fue declarada No Ha Lugar mediante *Resolución* emitida el 15 de marzo de 2023 y notificada el 16 de marzo de 2023.[12]

Inconforme con dicha determinación, la UPR acudió ante nos el 17 de abril de 2023 mediante el presente recurso de *Certiorari*, en el cual señala el error siguiente:

> Erró el Tribunal de Primera Instancia al declarar No Ha Lugar la Moción de Desestimación y/o Sentencia Sumaria por prescripción.

En esa misma fecha, la UPR presentó *Moción en Auxilio de Jurisdicción*, el cual fue declarado No Ha Lugar por este Tribunal mediante *Resolución* emitida y notificada el 18 de abril de 2023. En este dictamen, se le concedió un término de quince (15) días a la parte recurrida para presentar su alegato en oposición al recurso de *Certiorari* presentado por la UPR.

El 2 de mayo de 2023, la parte recurrida presentó *Memorando en Oposición a la Expedición del Auto de Certiorari*.

Contando con el beneficio de la comparecencia de las partes, procederemos a resolver.

**II**

**A.**

El recurso de *certiorari* es "un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un foro inferior." *IG Builders et al. v. BBVAPR,*

---

[11] Anejo IV del *Certiorari*, a las págs. 22-23.
[12] Anejos I y II del *Certiorari*, a las págs. 1-2 y 3-12.

185 DPR 307, 337-338 (2012). Véase, además, *800 Ponce de León Corp. v. Am. Int'l Ins. Co.*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). En el ámbito judicial, el concepto discreción "no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho." *IG Builders et al. v. BBVAPR*, supra, pág. 338. La discreción, "es una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera." *Torres González v. Zaragoza Meléndez*, 2023 TSPR 46, 211 DPR ___ (2023); *800 Ponce de León Corp. v. Am. Int'l Ins. Co.*, supra, a la pág. 174.

En el caso particular del Tribunal de Apelaciones, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, limita los asuntos interlocutorios que podemos revisar mediante un recurso de *certiorari*, bajo el entendimiento de que estos pueden esperar hasta la conclusión del caso para ser revisados en apelación. *IG Builders et al. v. BBVAPR*, supra, a la pág. 337. Dicha Regla dispone que el recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones:

> "cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 [de Procedimiento Civil, 32 LPRA Ap. V, R. 56 y 57,] o de la denegatoria de una moción de carácter dispositivo." Regla 52.1 de Procedimiento Civil, *supra.*

No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia:

> "cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia." *Íd.*

Al denegar la expedición de un recurso de *certiorari* en estos

últimos casos, la Regla 52.1 de Procedimiento Civil, *supra,* dispone que "el Tribunal de Apelaciones no tiene que fundamentar su decisión." *Íd.*

Por otra parte, la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que el Tribunal de Apelaciones deberá tomar en consideración al determinar si procede la expedición de un recurso de *certiorari* o de una orden de mostrar causa. Estos son:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
>
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
>
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia." Regla 40 del Reglamento del Tribunal de Apelaciones, *supra.*

**B.**

La prescripción extintiva constituye una institución propia del derecho civil en materia sustantiva, la cual está intrínsecamente atada al ejercicio del derecho que se pretende vindicar. *Campos v. Cía. Fom. Ind.*, 153 DPR 137, 143 (2001); *Olmo v. Young & Rubicam of P.R., Inc.*, 110 DPR 740, 742 (1981). Es una forma de extinción de un derecho, por la inercia de una parte en ejercer el mismo dentro del término prescrito por ley. *Maldonado Rivera v. Suárez,* 195 DPR 182 (2016); *Fraguada Bonilla v. Hospital del Auxilio Mutuo*, 186 DPR 365 (2012); *S.L.G. Serrano-Báez v. Foot Locker*, 182 DPR 824, 831

(2011). Esta figura tiene como objetivo impedir la incertidumbre de las relaciones jurídicas y sancionar la inacción del ejercicio de los derechos. *Orraca López v. ELA*, 192 DPR 31, 49 (2014); *COSSEC et al. v. González López et al.*, 179 DPR 793 (2010); *Santos de García v. Banco Popular*, 172 DPR 759 (2007).

Cónsono con lo anterior, el Artículo 1868 del Código Civil, 31 LPRA sec. 5298, dispone que las acciones de daños y perjuicios por culpa o negligencia a las que se refiere el Artículo 1802, 31 LPRA sec. 5141, tienen un término de prescripción de un (1) año.[13] *Col. Mayor Tecn. v. Rodríguez Fernández*, 194 DPR 635, 644 (2016); *Toro Rivera v. ELA*, 194 DPR 393, 415 (2015); *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra. El punto de partida de dicho término es la fecha en que el agraviado conoció o debió haber conocido que sufrió un daño, quién lo ocasionó, así como los elementos necesarios para poder ejercitar su causa de acción. *Rivera Ruiz v. Mun. de Ponce*, 196 DPR 40 (2016); *Toro Rivera v. ELA*, supra; *Fraguada Bonilla v. Hosp. Aux. Mutuo*, supra. En nuestro ordenamiento jurídico esta doctrina se conoce como la teoría cognoscitiva del daño. *COSSEC et al. v. González López et al.*, supra; *García Pérez v. Corp. Serv. Mujer*, 174 DPR 138 (2008); *Vera v. Dr. Bravo*, 161 DPR 308 (2004).

Una vez iniciado el término prescriptivo, corresponde a la parte agraviada expresar su voluntad de conservar su derecho a ser indemnizado. Nuestro ordenamiento reconoce tres maneras de manifestar la voluntad de conservar un derecho y que interrumpen efectivamente la prescripción extintiva, a saber: (1) el ejercicio de un derecho ante un foro judicial; (2) la reclamación extrajudicial de parte del titular de un derecho dirigida al deudor, y (3) el reconocimiento de una deuda por parte del deudor. Artículo 1873

---

[13] El "Código Civil de Puerto Rico", Edición de 1930, fue derogado y sustituido por la Ley Núm. 55-2020, según enmendada, conocida como *"Código Civil de Puerto Rico" de 2020*, 31 LPRA sec. 5311 *et seq.* No obstante, los hechos que originan la presente controversia tomaron lugar durante la vigencia del código anterior, por lo cual esta es la ley que aplica al caso.

del Código Civil de Puerto Rico, 31 LPRA sec. 5303. Una vez se interrumpe oportunamente la prescripción, el término prescriptivo comienza a transcurrir nuevamente. *SLG García-Villega v. ELA*, 190 DPR 799, 816 (2014).

En materia de prescripción de la causa de acción bajo el Artículo 1802 del Código Civil, *supra*, en *Fraguada Bonilla v. Hosp. Aux. Mutuo*, *supra*, se adoptó la figura de la solidaridad impropia (o *in solidum*) cuando coincide más de un causante de un daño. Conforme a esta figura, si el perjudicado interesa conservar su causa de acción contra cada uno de los causantes del daño, deberá interrumpir la prescripción en relación con cada uno por separado y dentro del término prescriptivo de un (1) año establecido por el Artículo 1868 del Código Civil, *supra*. Véase, además, *Maldonado Rivera v. Suárez y otros*, supra.

## c.

Las enmiendas a las alegaciones de una demanda están reguladas por la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.1, la cual dispone lo siguiente:

> "Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera. La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal de otro modo lo ordene."

A pesar de que las Reglas de Procedimiento Civil favorecen un enfoque liberal para autorizar enmiendas a las alegaciones, esta

liberalidad no es infinita. *Romero v. S.L.G. Reyes*, 164 DPR 721, 730, (2005). La decisión de permitir enmendar las alegaciones es discrecional del tribunal. Se han establecido varios criterios para demarcar el ejercicio adecuado de dicha discreción. Estos son: (a) el momento en que se solicita la enmienda; (b) el impacto de la solicitud en la pronta adjudicación de la cuestión litigiosa; (c) la razón o ausencia de ella para la demora e inacción original del promovente de la enmienda; (d) el perjuicio que la misma causaría a la otra parte; y (e) la naturaleza y méritos intrínsecos de la defensa que se plantea. *Íd.*

Por otra parte, la Regla 13.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 13.3, expone la normativa aplicable para enmendar la demanda con el fin de sustituir una parte. En lo pertinente, esta Regla dispone lo siguiente:

> "Siempre que la reclamación o defensa expuesta en la alegación enmendada surja de la conducta, del acto, de la omisión o del evento expuesto en la alegación original, las enmiendas se retrotraerán a la fecha de la alegación original.
>
> Una enmienda para sustituir la parte contra la cual se reclama se retrotraerá a la fecha de la alegación original si, además de cumplirse con el requisito anterior y dentro del término prescriptivo, la parte que se trae mediante enmienda:
>
> (1) Tuvo conocimiento de la causa de acción pendiente, de tal suerte que no resulta impedida de defenderse en los méritos, y
>
> (2) de no haber sido por un error en cuanto a la identidad del(de la) verdadero(a) responsable, la acción se hubiera instituido originalmente en su contra.
>
> Una enmienda para incluir a una parte demandante se retrotraerá a la fecha de la alegación original si ésta contiene una reclamación que surja de la misma conducta, acto, omisión, o evento que la acción original y que la parte demandada haya tenido conocimiento, dentro del término prescriptivo, de la existencia de la causa de acción de los reclamantes que se quieren acumular como demandantes y de su participación en la acción original."

El Tribunal Supremo ha resuelto que "si con la enmienda se intenta añadir un nuevo demandante o demandado, el momento que

determina el término prescriptivo es cuándo se incluye el nuevo demandante o demandado por primera vez en la demanda". *Ortiz Díaz v. R. & R. Motors Sales Corp.*, 131 DPR 829, 837-38 (1992). Esto "con excepción de lo dispuesto por las Reglas 15.1, 15.4 y 13.3 de Procedimiento Civil y la situación en que exist[a] solidaridad entre el demandante o demandado ya incluido en la demanda original y el nuevo". *Arce Bucetta v. Motorola*, 173 DPR 516, 538-39 (2008).

Finalmente, la Regla 15.4 de Procedimiento Civil, 32 LPRA Ap. V, 15.4, que establece el mecanismo procesal disponible para incluir en un pleito a una parte demandada de nombre desconocido, dispone lo siguiente:

> "Cuando una parte demandante ignore el verdadero nombre de una parte demandada, deberá hacer constar este hecho en la demanda exponiendo la reclamación específica que alega tener contra dicha parte demandada. En tal caso, la parte demandante podrá designar con un nombre ficticio a dicha parte demandada en cualquier alegación o procedimiento, y al descubrirse el verdadero nombre, hará con toda prontitud la enmienda correspondiente en la alegación o procedimiento."

Lo establecido en esta Regla es una excepción a la regla general que exige que en la demanda se designe al demandado por su nombre correcto y se le notifique adecuadamente para garantizar su derecho a un debido proceso de ley. La excepción, en esencia, busca suplir las deficiencias de los términos prescriptivos en los momentos en que, a pesar de la debida diligencia y de conocer la identidad del demandado, se desconoce su nombre correcto. *Núñez González v. Jiménez Miranda*, 122 DPR 134, 139 (1988).

En cuanto al alcance de la regla, el Tribunal Supremo ha expresado que esta disposición es aplicable a la situación en que un demandante conoce la identidad de un demandado, pero ignora su verdadero nombre. *Padín v. Cia. Fom. Ind.*, 150 DPR 403, 417 (2000); *José Moa v. E.L.A.*, 100 DPR 573 (1972); *Ortiz v. Gobierno Municipal de Ponce*, 94 DPR 472 (1967). Al respecto, dicho foro ha señalado

que la "ignorancia del verdadero nombre del demandado debe ser real y legítima, y no falsa o espuria". *Fuentes v. Tribl. de Distrito*, 73 DPR 959, 986-987 (1952). Véase, además, *Menéndez Lebrón v. Rodríguez Casiano*, 203 DPR 885 (2020) (sentencia).

**III**

En su recurso de *Certiorari*, la UPR señala que erró el TPI "al declarar No Ha Lugar la Moción de Desestimación y/o Sentencia Sumaria por prescripción." En síntesis, alega que la UPR fue incluida en el pleito transcurrido el término prescriptivo de un (1) año establecido en el Artículo 1868 del Código Civil, *supra*, para presentar una acción bajo el Artículo 1802 del Código Civil, *supra*, el cual comenzó a transcurrir el 19 de marzo de 2021, fecha en que la parte recurrida tuvo conocimiento de que el Dr. José Santiago Figueroa trabajaba para dicha entidad. En su alegato en oposición, la parte recurrida sostiene, en síntesis, que la demanda original tuvo el efecto de interrumpir el término prescriptivo con relación a la UPR, por lo que la causa de acción contra dicha parte no está prescrita.

De un examen del expediente del presente caso surge que la parte recurrida presentó el 28 de octubre de 2020 una demanda solicitando una indemnización por los daños y perjuicios sufridos por la alegada falta de pericia de las partes demandadas al brindarle tratamiento médico al Sr. Edwin Rodríguez Nieves en el Centro Médico de Puerto Rico entre el 29 de octubre de 2019 y el 21 de febrero de 2020. La demanda original se presentó en contra del Dr. Aníbal Tornés Acosta, Fulana de Tal y la Sociedad de Bienes Gananciales compuesta entre ambos; el Dr. José Santiago Figueroa, Mengana de Tal y la Sociedad de Bienes Gananciales compuesta entre ambos; y el Centro Médico de Puerto Rico, Inc. En cuanto a este último, alegó lo siguiente:

"7. **LA PARTE DEMANDADA, CENTRO MÉDICO DE PUERTO RICO, INC.** ("Hospital"), es una entidad corporativa debidamente inscrita bajo las leyes de Estado Libre Asociado **que proveyó el personal médico que le brindó tratamiento negligente al Sr. Rodríguez, por lo cual responde vicariamente y solidariamente por los daños que se reclaman en la presente demanda.** Su dirección es: Centro Médico de PR y el Caribe, R[í]o Piedras 00921 San Juan, Puerto Rico y su número de teléfono es: (787) 777-3535." (Énfasis suplido.) Anejo V del *Certiorari*, págs. 25-26.

Al momento de presentar esta demanda, la parte recurrida no conocía todos los detalles relacionados a los hechos, por lo que demandó también a varias aseguradoras, doctores y corporaciones de nombres desconocidos. En cuanto a estas partes, alegó lo siguiente:

"8. **LA PARTE DEMANDADA**, las aseguradoras A, B, C, y D, son compañías aseguradoras desconocidas las cuales emitieron pólizas a favor de cualquiera de los codemandados que cubren los hechos que más adelante se relatan. Las aseguradoras A, B, C, y D responden solidariamente por los daños que se reclaman en la presente demanda.

9. **LA PARTE DEMANDADA**, los doctores desconocidos E y F, son médicos que proveyeron tratamiento negligente al Sr. Rodríguez, de los cuales al presente se desconoce su nombre.

10. **LA PARTE DEMANDADA**, las corporaciones G y H, **son entidades o corporaciones organizadas bajo las leyes del Estado Libre Asociado de Puerto Rico, las cuales administraban la sala de emergencia, el Hospital o el consultorio médico donde el paciente fue tratado, por lo cual responden vicaria y solidariamente por los daños que se reclaman en la presente demanda.**" *Íd*. (Énfasis suplido.)

El 25 de febrero de 2021, la parte recurrida presentó *Primera Demanda Enmendada* con el fin de corregir un error en cuanto a la identidad de una de las partes demandadas. Específicamente, se sustituyó al Centro Médico de Puerto Rico, Inc. por ASEM. En cuanto a esta parte, continuó alegando lo siguiente:

"**LA PARTE DEMANDADA, ADMINISTRACIÓN DE SERVICIOS MÉDICOS DE PUERTO RICO** ("Hospital"), es una entidad corporativa debidamente inscrita bajo las leyes de Estado Libre Asociado **que proveyó el personal médico que le brindó tratamiento negligente al Sr. Rodríguez, por lo cual responde vicariamente y solidariamente por los daños que se**

**reclaman en la presente demanda.** Su dirección es: Centro Médico de PR y el Caribe, R[í]o Piedras 00921 San Juan, Puerto Rico y su número de teléfono es: (787) 777-3535. (Énfasis suplido.) Anejo VI del *Certiorari*, págs. 32-33.

En esta primera enmienda a la demanda, se reiteraron las mismas alegaciones dirigidas a las aseguradoras, doctores y corporaciones de nombres desconocidos que se hicieron en la demanda original.[14]

Durante el transcurso del proceso judicial, se presentaron dos escritos, en los cuales, entre otras cosas, se les informó a las partes y al TPI que el Dr. José Santiago Figueroa trabajaba para la UPR. Estos son, la *Comparecencia Especial Solicitando Prórroga para Hacer Alegación Responsiva sin Someterse a la Jurisdicción de este Honorable Tribunal & Asumiendo Representación Legal* presentada por el Dr. Aníbal Tornes Acosta, *et als.*, el 19 de marzo de 2021; y la *Contestación a Primera Demanda Enmendada* presentada por ASEM el 3 de mayo de 2021.[15]

Finalmente, el 11 de julio de 2022, la parte recurrida solicitó, durante una vista, autorización para enmendar la demanda con el fin de incluir a la UPR como parte demandada en el pleito. La *Segunda Demanda Enmendada* se presentó el 8 de agosto de 2022. En esta, se alegó lo siguiente en cuanto a la UPR:

> "3. **LA PARTE DEMANDADA, UNIVERSIDAD DE PUERTO RICO, RECINTO DE CIENCIAS MÉDICAS** (en adelante, *Recinto de Ciencias Médicas*"), es una entidad corporativa debidamente formada bajo las leyes de Estado Libre Asociado **que proveyó el personal médico que le brindó o debió haber brindado tratamiento al Sr. Rodríguez, por lo cual responde vicariamente y solidariamente por los daños que se reclaman en la presente demanda.** Su dirección es: Centro Médico de Puerto Rico y del Caribe, Rio Piedras 00921 San Juan, Puerto Rico y su número de teléfono es: (787) 777-3535. (énfasis suplido) Anejo VII del *Certiorari*, a las págs. 39-52.

---

[14] Véase, nota al calce Núm. 3.
[15] Véase, nota al calce Núm. 4.

Cabe resaltar que, en esta segunda enmienda a la demanda, se reiteraron también las mismas alegaciones dirigidas a las aseguradoras, doctores y corporaciones de nombres desconocidos que se hicieron en la demanda original y en la primera enmienda a la demanda.[16]

A tenor con la teoría cognoscitiva del daño, el término prescriptivo de un (1) año establecido en el Artículo 1868 del Código Civil, *supra*, para presentar una acción de daños y perjuicios al palio del Artículo 1802 del Código Civil, *supra*, comienza a transcurrir una vez el perjudicado conoció -o debió conocer- que sufrió un daño, quién se lo causó, así como los elementos necesarios para ejercitar efectivamente su causa de acción. *Maldonado Rivera*, supra; *COSSEC et al. v. González López et al.*, supra. En los casos en que coincida más de un causante de un daño, se deberá interrumpir dicho término prescriptivo con relación a cada uno por separado. *Fraguada Bonilla v. Hosp. Aux. Mutuo, supra*.

Luego de un análisis de las alegaciones hechas en la demanda original y la segunda demanda enmendada, descartamos la aplicación de las Reglas 13.3 y 15.4 de las Reglas de Procedimiento Civil, *supra*, al presente caso. La reclamación que se alega tener en la segunda demanda enmendada contra la UPR como "entidad corporativa […] que proveyó el personal médico que le brindó o debió haber brindado tratamiento al Sr. Rodríguez" no se expuso en la demanda original. De las alegaciones ahí expuestas, no podemos colegir que la UPR era una parte cuya identidad se conocía.

A nuestro juicio, la parte recurrida intentó incluir a una parte nueva a destiempo. Sin embargo, como expusimos, durante el proceso judicial, la parte recurrida tuvo conocimiento desde el 13 de marzo de 2021 de que el Dr. José Santiago Figueroa no trabajaba

---

[16] Véase, nota al calce Núm. 5.

para la ASEM, sino para la UPR. No obstante, la UPR fue traída al pleito mediante la segunda demanda enmendada presentada el 8 de agosto de 2022 a más de un (1) año, no sólo de los hechos que dieron lugar a la causa de acción, sino también desde que se presentó la demanda original y desde que se tuvo conocimiento de que era la entidad que proveyó el doctor que le brindó tratamiento médico al Sr. Rodríguez Nieves.

La parte apelada una vez advino en conocimiento el 19 de marzo y 3 de mayo de 2021 de que la UPR era la entidad que le brindo los servicios médicos no podía cruzarse de brazos y tenía que hacer la sustitución de parte conforme a derecho de forma oportuna.

Su tardanza fue excesiva y denoto falta de la debida diligencia para ejercitar su causa de acción. Por lo tanto, determinamos que la reclamación en cuanto a la UPR fue realizada a destiempo y está prescrita y, en consecuencia, procedemos a la desestimación de la causa de acción en cuanto a esta parte.

**IV**

Por los fundamentos anteriormente expuestos, se expide el auto de *certiorari*, se revoca la *Resolución* recurrida, se desestima la demanda en cuanto a la UPR y se ordena la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones